WILLIAM PARSONS, APPELLANT FROM A DECREE OF THE JUDGE OF PROBATE *vs.* SARAH PARSONS, APPELLEE.

Of the evidence to establish a nuncupative will.

THE appellee was the widow of *James Parsons*, who died without issue, leaving the appellant, who was his father, his heir at law ;—and the appeal was from the decree of the Judge of Probate establishing a nuncupative will of the deceased.

The evidence was,—that the deceased was a shipmaster, but that he sickened and died at home ;—that on the morning before his death, being asked who he intended should have his property, he replied that his wife should ;—that his father, being present, thereupon observed that *he* did not wish for a cent of his son's property, but desired that it might go to the wife ; and spoke of it both then, and on another occasion, as a matter well understood and agreed upon ;—that in the evening of the night on which he died, the deceased being again asked whether he wished his wife or his father to have his property, he replied " all to my wife ; that is agreed upon,"—and thereupon looked up to his father, as if for his assent ;—that the father, rightly interpreting this appeal to him, replied " yes—yes,"-- and the deceased, turning his eyes to his wife, said " you see my father acknowledges it."

*Allen, for the appellant,* contended that this evidence did not satisfy the provisions of the statute of wills, which requires that the testator should bid the persons present to bear witness that such was his will, or *to that effect.* This last solemn act ought to proceed voluntarily and unsolicited from the party, and not merely in reply to an interrogatory. The practice of making nuncupative wills has at no time been treated with favour or indulgence. *Toller, Ex.* 8 and *Blackstone, 2 Com.* 500. con-

Parsons v. Parsons.

sider it as open to all the objections which the statute of frauds was enacted to prevent; as having become nearly obsolete at the time they wrote; and as limited to those cases only where the testator was surprised by sudden and violent sickness. There is still less reason for regarding it with favour in this country, where education is so common, and the practice of writing is nearly universal; and especially in this case, where the party was a man of business, dying gradually, in the full possession of his faculties, in the bosom of his family, and surrounded by magistrates competent to have advised in the legal execution of a written testament; and where the equal and beneficent provisions of the statute of distributions have made ample provision both for the widow and the heir at law.

*Ruggles*, on the other side, contended that the evidence in the case sufficiently satisfied the words of the statute, and plainly shewed a *testamentary disposition* of his whole estate. And he cited 7 *Bac. Abr.* 314, 339. 1 *Mod.* 211. *Osgood v. Breed,* 12 *Mass.* 582. *Bond v. Seawell*, 3 *Burr.* 1775. *Mason v. Dunman*, 1 *Munf.* 456.

Mellen, C. J. delivered the opinion of the Court at the ensuing term in *Kennebec.*

The third section of the statute of 1783, *ch.* 24. [*Stat.* 1821, *ch.* 38.] provides that " no nuncupative will shall be good, " whereby the estate thereby bequeathed shall exceed the " value of one hundred dollars, that is not proved by the oath of " three witnesses, who were present at the making thereof; nor " unless it be proved that the testator, at the time of pronounc- " ing the same, bid the persons present or some of them to bear " witness that such was his will, *or to that effect.*" The section contains some other provisions which, in the present case, need not be examined.—The only question which has been made is, whether any nuncupative will was made, coming within the provisions of the act. The testator had no children; and of course his father was heir at law to his estate;—or rather to one half of it: the estate being *personal*, one half of it by law belonged to the widow of the deceased. In general, nuncupative wills should be examined with a very critical eye, es-

Parsons *v.* Parsons.

pecially when made by persons who were among friends and dependants, and in situations where a written will might easily have been made. In such circumstances it is the duty of the Court to see that the statute is strictly complied with, and the rights of heirs duly protected. It was well observed by the counsel for the appellant that the great object in view in multiplying checks in such cases, is to guard the interest of the the heirs at law from the dangers of fraud and imposition.

It is satisfactorily proved in the case before us that on one or two occasions prior to the evening when the testator died, his *father*, the heir, stated that he had no wish to have his son's property, but desired it might be given to the wife ; and spoke of it as a matter which had been understood, arranged, and agreed upon by all concerned. Accordingly when the testator, a short time before his death, was asked to whom he wished to give his property,—he immediately replied—"to my wife ; that is agreed upon ;"—and when giving this answer, he looked up in his father's face, by way of appealing to him for the correctness of the answer, as the witnesses construed it ; upon which the father instantly said—" yes, yes." The testator then turned his eyes on his wife and said, " you see my father acknowledges it." These are the circumstances relied on by the appellee to shew that, though the testator did not *bid* the witnesses, or some of them who were present, to *bear witness that such was his will*, yet he did what was "*to that effect.*" And when we consider the previous understanding and agreement with the father as to the disposition of his son's property, and his own disavowal of a wish for any part of it ; and further consider that this arrangement was alluded to by the son a short time before his death, not only in plain language, but also in his silent appeal to the father, and the remark to his wife, founded on his father's answer ; when we further consider that all this took place in the presence of the three witnesses who have testified in the cause, and that the father and heir at law was also present and assenting, and compare these facts with the cases cited for the appellee, we are of opinion that the spirit, intent, and meaning of the statute has been complied with in every essential particular ; and accordingly

*We affirm the decree of the Judge of Probate.*